UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| JAMES T. CARDEN, JR., ROBERT L. FOX, LEON W. HEDRICK, ROBERT B. KLEE, GEORGE M. LEMBO, LOREN E. LOVELAND, TERRY D. MYERS, CHARLES R. SAMUELSON, MICHAEL B. SCHAEFER, ARTHUR J. SCHUBERT, THURLOW E. WILLIAMS, MICHELLE W. WOODS, RAYMOND E. YOUNG, WILLIAM H. ZIEGLER,<br><br>        Plaintiffs,<br><br>  v.<br><br>CHENEGA SECURITY & PROTECTION SERVICES, LLC,<br><br>        Defendant.<br>_____/ | NO. CIV. 2:09-1799 WBS CMK<br><br><u>MEMORANDUM AND ORDER RE:</u><br><u>MOTION FOR SUMMARY JUDGMENT</u> |

----oo0oo----

Plaintiffs James T. Carden, Jr., Robert L. Fox, Leon W. Hedrick, Robert B. Klee, George M. Lembo, Loren E. Loveland, Terry D. Myers, Charles R. Samuelson, Michael B. Schaefer, Arthur J. Schubert, Thurlow E. Williams, Michelle W. Woods, Raymond E. Young, and William H. Ziegler brought this action, alleging that

1

defendant Chenega Security and Protection Services, LLC ("Chenega"), discriminated against plaintiffs based on their ages by failing to hire them for security guard positions. All plaintiffs except George M. Lembo have since dismissed their claims. Chenega now moves for summary judgment on all claims pursuant to Federal Rule of Civil Procedure 56.

I.   Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Alternatively, the moving party can demonstrate that the non-moving party cannot produce evidence to support an essential element upon which it will bear the burden of proof at trial. Id.

Once the moving party meets its initial burden, the burden shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting then-Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is

2

some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." <u>Anderson</u>, 477 U.S. at 252.

In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. <u>Id.</u> at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . . ." <u>Id.</u>

II. <u>Relevant Facts</u>

Lembo began working for Pinkerton, a security company, in 1994. (Deschler Decl. in Supp. of Def.'s Mot. for Summ. J. ("Deschler Decl.") (Docket Nos. 43-49) Ex. 1.D ("Def.'s Lembo Dep.") at 21:5-13.) In 2004, Lembo was transferred to Shasta Dam, where he worked as an armed guard for Pinkerton. (<u>Id.</u> at 27:11-28:12.) In mid-2007, Lembo learned that his employment with Pinkerton would be ending because Chenega had been awarded the contract to supply security services at Shasta Dam. (<u>Id.</u> at 46:23-47:11.) Although the parties dispute some of the details of the hiring process conducted by Chenega, it is undisputed that Chenega advertised for security guard positions, accepting applications from both Pinkerton employees and outsiders. (Barry Decl. in Supp. of Def.'s Mot. for Summ. J. ("Barry Decl.") (Docket No. 53) ¶ 5; Deschler Decl. Ex. 1.M ("Gutierrez Dep.") at

3

27:16-28:16.)  Dan Barry, Chenega's Director of Operations, held "town hall meetings" with Pinkerton employees and other applicants to introduce Chenega and its hiring process and philosophy, as well as to informally interview candidates.  (Id.)

Barry and James Gutierrez, a project manager for Chenega, recall that several individuals were rude or disrespectful at the town hall meetings.  (Deschler Decl. Ex. 1.J ("Def.'s Barry Dep.") at 92:1-97:8, 98:7-99:7, 103:10-108:4, 116:1-16, 123:4-8; Gutierrez Dep. at 20:1-13, 42:23-44:19, 48:4-23.)  Barry believed that Lembo publicly challenged Barry regarding a physical agility test required for employment with Chenega and stated that he received health benefits as a member of the military and thus wanted a "health and welfare cash out" instead of benefits from Chenega.  (Def.'s Barry Dep. at 92:1-97:8, 98:7-99:7, 103:10-108:4, 116:1-16, 123:4-8.)  Barry claims that he made the decision not to hire Lembo based on Lembo's actions during the town hall meeting.  (Id.)  Lembo does not believe that he was rude or disrespectful during the town hall meeting.  (Def.'s Lembo Dep. at 76:12-80:1.)  Lembo points out that Barry has described the rude or disrespectful person as tall and slender, when Lembo is in fact short and "a little bit overweight."  (Cogan Decl. in Supp. of Opp'n to Mot. for Summ. J. ("Cogan Decl.") (Docket No. 63) Ex. 1.B ("Pl.'s Barry Dep.") at 112:15-18, 113:12-114:22; Lembo Decl. in Opp'n to Mot. for Summ. J. ("Lembo Decl.") (Docket No. 60-3) ¶ 8.)  Furthermore, Lembo was never in the military.  (Lembo Decl. ¶ 8.)  Lembo was never formally interviewed, and was not offered a position with Chenega, which ultimately hired thirty-two security guards.

4

(Johns Decl. in Supp. of Def.'s Mot. for Summ. J. ("Johns Decl.") (Docket No. 53) ¶¶ 10, 13; Lembo Decl. ¶¶ 6, 9.)

Lembo was 58 years old in September of 2007. (Pl.'s Lembo Dep. at 6:10-14, 57:5-9.) He notes that, only considering former Pinkerton employees, the median age of those hired was 44 and the median age of those not hired was 61; the mean age of those hired was 43, and the mean age of those not hired was 57.3. (McFadden Decl. in Opp'n to Mot. for Summ. J. ("McFadden Decl.") (Docket No. 60-5) Ex. A at 1.) The court also notes that the mean age of all guards hired, as opposed to only former Pinkerton guards, was 42.875; the median was 44. (Baker Decl. in Supp. of Def.'s Mot. for Summ. J. ("Baker Decl.") (Docket No. 51) Ex. A App. B.) Four of the hired guards were in their twenties; six were in their thirties; fifteen were in their forties; four were in their fifties; three were in their sixties. (Id.)

The ages of all non-hired applicants, whether or not former Pinkerton employees, have not been provided to the court. The parties dispute the facts regarding the number of applicants for the security guard positions and the number who survived the first round of cuts, and Chenega itself is inconsistent in its figures.[1] Neither party has provided a comprehensible list of the ages of the people they believe applied or survived the first round of cuts or even attempted to explain the disputes regarding who such a list would include.

---

[1] Chenega provided evidence that 279 people applied for the positions and 159 made the first cut. However, in a request for admissions, which were deemed admitted due to Lembo's failure to respond (Docket No. 95), Chenega asked Lembo to admit that 262 people applied and 152 made the first cut.

5

1     Chenega emphasizes data showing that the percentage of
2 guards hired who were age forty or above is higher than the
3 percentage who applied.  "Because the ADEA prohibits
4 discrimination on the basis of age and not class membership, the
5 fact that a replacement is substantially younger than the
6 plaintiff is a far more reliable indicator of age discrimination
7 than is the fact that the plaintiff was replaced by someone
8 outside the protected class."  O'Connor v. Consol. Coin Caterers
9 Corp., 517 U.S. 308, 313 (1996).  That is, an employer could
10 discriminate on the basis of age by hiring someone younger than
11 the plaintiff but still age forty or above.  The court will not
12 focus on class membership but will instead consider the figures
13 showing the average age of applicants hired and not hired.
14     On June 30, 2009, Lembo and thirteen other former
15 Pinkerton employees filed this action against Chenega, alleging
16 age discrimination in violation of the Age Discrimination in
17 Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, and the Fair
18 Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940.
19 (Docket No. 1.)

20 III. Evidentiary Objections

21     "A party may object that the material cited to support
22 or dispute a fact cannot be presented in a form that would be
23 admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  "[T]o
24 survive summary judgment, a party does not necessarily have to
25 produce evidence in a form that would be admissible at trial, as
26 long as the party satisfies the requirements of Federal Rules of
27 Civil Procedure 56."  Fraser v. Goodale, 342 F.3d 1032, 1036-37
28 (9th Cir. 2003) (quoting Block v. City of Los Angeles, 253 F.3d

6

410, 418-19 (9th Cir. 2001)) (internal quotation marks omitted). Even if the non-moving party's evidence is presented in a form that is currently inadmissible, such evidence may be evaluated on a motion for summary judgment so long as the moving party's objections could be cured at trial. See Burch v. Regents of the Univ. of Cal., 433 F. Supp. 2d 1110, 1119-20 (E.D. Cal. 2006).

Chenega has filed twenty-five evidentiary objections (Docket No. 72), objecting to portions of four declarations submitted by Lembo on the grounds of lack of foundation, hearsay, relevance, lack of personal knowledge, speculation, improper opinion testimony, improper legal or expert conclusions, vagueness and ambiguity, lack of authentication, and unreliable expert testimony. Lembo has filed seven evidentiary objections (Docket Nos. 61, 62), objecting to portions of two declarations submitted by Chenega on the grounds of lack of foundation, relevance, vagueness and ambiguity, lack of authentication, and hearsay.

Objections to evidence on the ground that the evidence is irrelevant, speculative, argumentative, vague and ambiguous, or constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself. See Burch v. Regents of Univ. of Cal., 433 F. Supp. 2d 1110, 1119-20 (E.D. Cal. 2006). A court can award summary judgment only when there is no genuine dispute of material fact. It cannot rely on irrelevant facts, and thus relevance objections are redundant. Instead of objecting, parties should argue that certain facts are not material. Similarly, statements based on speculation, improper legal conclusions, or argumentative statements, are not facts and

can only be considered as arguments, not as facts, on a motion for summary judgment. Instead of challenging the admissibility of this evidence, lawyers should challenge its sufficiency. Objections on any of these grounds are superfluous, and the court will overrule them.

While the parties use various phrases to describe their objections, the bulk of the objections essentially debate the accuracy and relevance of the opposing party's expert reports, particularly the data and statistical analyses used in describing the ages of applicants who were hired or not hired by Chenega. As explained above, these objections deal not with whether the reports are <u>admissible</u> but whether the facts contained therein are true and relevant. The court considers the relevance of the facts as it considers the parties' arguments, and the court must take all disputed facts in the light most favorable to the non-moving party, but the court need not rule on the admissibility of such facts when no reason has been shown why they would not be admissible at trial.

In the interest of brevity, as the parties are aware of the substance of their objections and the grounds asserted in support of each objection, the court will not review the substance or grounds of the individual objections here. The parties' objections are all overruled.

IV.   <u>Discussion</u>

The ADEA makes it illegal for an employer "to fail or refuse to hire . . . any individual [age forty or above] . . . because of such individual's age."  29 U.S.C. § 623(a)(1). Similarly, FEHA makes it illegal for an employer "because of the

8

. . . age . . . of any person, to refuse to hire or employ the person." Cal. Gov't Code § 12940(a).

On a defendant's motion for summary judgment, claims of disparate treatment based on age under the ADEA are evaluated pursuant to the burden-shifting framework provided in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Whitman v. Mineta, 541 F.3d 929, 932 (9th Cir. 2008). Claims of age discrimination under FEHA are subject to that same analysis. Bradley v. Harcourt, Brace & Co., 104 F.3d 267, 270 (9th Cir. 1996); see Guz v. Bechtel Nat'l Inc., 24 Cal. 4th 317, 354 (2000) ("Because of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying our own statutes.").

Under the McDonnell Douglas framework, "the burden of production first falls on the plaintiff to make out a prima facie case of discrimination." Coghlan v. Am. Seafoods Co., 413 F.3d 1090, 1094 (9th Cir. 2005). If a plaintiff successfully establishes his prima facie case, the "burden of production then shifts to the employer, who must present evidence sufficient to permit the factfinder to conclude that the employer had a legitimate, nondiscriminatory reason for the adverse employment action." Id. Once the employer articulates a legitimate, nondiscriminatory reason for its actions, the plaintiff, in order to survive summary judgment, then bears the burden of supplying evidence to the court that the reason advanced by the employer constitutes mere pretext for unlawful discrimination. See id. (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507-08 (1993)).

"[T]he plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment . . . because 'the ultimate question is one that can only be resolved through a searching inquiry--one that is most appropriately conducted by the factfinder, upon a full record.'" Chuang v. Univ. of Cal. Davis, 225 F.3d 1115, 1124 (9th Cir. 2000) (citing Schnidrig v. Columbia Mach., Inc., 80 F.3d 1406, 1410 (9th Cir. 1996)). The Ninth Circuit recognizes "the importance of zealously guarding an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses." McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1112 (9th Cir. 2004).

A.  Prima Facie Case

To make out a prima facie case of age discrimination for failure to hire, a plaintiff must show that (1) he was at least forty years old at the time of the alleged discrimination; (2) he was subjected to an adverse employment action; (3) he was otherwise qualified for the position; and (4) after he was rejected, a substantially younger applicant was selected.[2] See Hedrick v. W. Reserve Care Sys., 355 F.3d 444, 459-60 (6th Cir. 2004); Zaccagnini v. Charles Levy Circulating Co., 338 F.3d 672,

---

[2] Chenega cites to Gross v. FBL Financial Services, Inc., --- U.S. ----, 129 S. Ct. 2343 (2009), for the proposition that a plaintiff must establish that age was the "but-for" cause for the employer's adverse action and that the ADEA does not authorize a "mixed-motives" age discrimination claim. Id. at 2350-51. Gross dealt with jury instructions regarding the burden at trial; it did not add an element to the prima facie case.

675 (7th Cir. 2003); Cotton v. City of Alameda, 812 F.2d 1245, 1248 (9th Cir. 1987); Guz, 24 Cal. 4th at 355 ("Generally, the plaintiff must provide evidence that (1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive."). As to the fourth factor, a plaintiff may instead show "through circumstantial, statistical, or direct evidence that the discharge [or failure to hire] occurred under circumstances giving rise to an inference of age discrimination." Rose v. Wells Fargo & Co., 902 F.2d 1417, 1421 (9th Cir. 1990). The Supreme Court has held that the selected applicant may be a member of the protected class so long as he is substantially younger than the plaintiff. O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312-13 (1996) ("The fact that one person in the protected class has lost out to another person in the protected class is thus irrelevant, so long as he has lost out because of his age.").

Lembo has satisfied the first three elements of a prima facie case by showing that he was fifty-eight years old at the time of the alleged discrimination, Chenega did not hire him when he applied, and he was qualified for the position, having served in the same position with Pinkerton for three years.

As to the fourth prong, "the guidelines set forth in McDonnell Douglas were intended to be a flexible blueprint. . . . What must be shown to support an inference that the plaintiff was discriminated against depends on the facts of each case." Peters

11

v. Lieuallen, 693 F.2d 966, 969 (9th Cir. 1982). The average age of the hired guards was approximately 44, which is significantly younger than Lembo's age. This evidence is sufficient to support an inference of discrimination, and Lembo has thus satisfied his burden of showing a prima facie case.

B. Nondiscriminatory Reason

Because Lembo has established a prima facie case of age discrimination, Chenega must produce a legitimate, nondiscriminatory reason for failing to hire Lembo. Davis v. Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008). Chenega states that Lembo was not hired because he was rude and aggressive at a town hall meeting. (Def.'s Mot. for Summ. J. (Docket No. 39) at 4:5-21.) This constitutes a legitimate, nondiscriminatory reason for failing to hire an applicant, and thus the burden shifts back to plaintiff.

C. Pretext

In light of Chenega's proffered reason for failing to hire him, Lembo must now adduce evidence "show[ing] that the 'reason is pretextual either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'"[3] Davis, 520 F.3d at 1089

---

[3] Earlier case law suggests that a plaintiff who relies on circumstantial evidence to show pretext must produce "specific" and "substantial" evidence. See, e.g., Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1222 (9th Cir. 1998). Those cases have been questioned in light of the Supreme Court's decision in Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003), in which the Court affirmed the sufficiency of circumstantial evidence. See Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1030-31 (9th Cir. 2006) (questioning the continued viability of Godwin).

12

(quoting Chuang, 225 F.3d at 1123-24).  The Ninth Circuit has advised that showing "the ultimate fact of intentional discrimination is obviously different and more difficult than the burden imposed on a plaintiff to raise a triable issue of fact as to pretext sufficient to defeat summary judgment."  Noyes v. Kelly Servs., 488 F.3d 1163, 1170 (9th Cir. 2007).

Statistical evidence, internal inconsistencies, and "shifting explanations" are examples of forms of indirect evidence that may tend to show pretext.  E.g., Diaz v. Eagle Produce Ltd. Partnership, 521 F.3d 1201, 1212-14 (9th Cir. 2008); Coghlan, 413 F.3d at 1095; Nidds v. Schindler Elevator Corp., 113 F.3d 912, 918 (9th Cir. 1996); see also Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 771 (11th Cir. 2005) (evidence of pretext should show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence") (internal quotation marks omitted).

Lembo offers several pieces of evidence that, taken together, plausibly show that Chenega's given reason for failing to hire Lembo was pretextual.  First, there is a factual dispute as to whether Lembo actually made the inflammatory statements Barry claims he made at the meeting, and Lembo provides evidence that Barry's description does not fit Lembo.  Second, Chenega required applicants to list their ages on the application forms, which is not direct evidence of discrimination but should be closely scrutinized.  Third, the average age of the guards hired by Chenega was significantly younger than Lembo's age.  While any

13

of this evidence on its own might be insufficient to survive summary judgment, a reasonable factfinder could take Lembo's evidence together and conclude that Chenega's proffered explanation is unworthy of credence. See Johnson v. United Cerebral Palsy/Spastic Children's Found. of L.A. & Ventura Cntys., 173 Cal. App. 4th 740, 758 (2d Dist. 2009) (stating that evidence, although independently insufficient to create a triable issue, can be aggregated to defeat summary judgment).

Lembo first disputes Chenega's explanation, contending that he never made inflammatory statements at a town hall meeting. As evidence, he notes that he has never been a member of the military, and thus would not have made a statement about his military experience. Furthermore, Barry described Lembo as being tall and thin, when he is in fact short and slightly overweight. This indicates either that Barry was mistaken in believing Lembo to be one of the people speaking at the town hall meeting or that Chenega's proffered explanation for failing to hire Lembo is false. If Barry refused to hire Lembo merely on the basis of mistaken identity, Lembo cannot recover for age discrimination. See Hersant v. Dep't of Social Servs., 57 Cal. App. 4th 997, 1005 (4th Dist. 1997) ("The [employee] cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." (quoting Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994))). However, given Lembo's other evidence indicating discriminatory animus, it is not clear that the decision not to hire Lembo was an innocent mistake.

14

Chenega's requirement that applicants provide their ages on the application does not constitute direct evidence of age discrimination. Merely asking for an applicant's age on an employment application is not improper, see 29 C.F.R. § 1625.5, and Chenega argues that it needed the age information to ensure that applicants met the minimum age of twenty-one. However, "because the request that an applicant state his age may tend to deter older applicants or otherwise indicate discrimination against older individuals, employment application forms that request such information will be closely scrutinized to assure that the request is for a permissible purpose and not for purposes proscribed by the Act." Id.

Finally, Chenega, knowing the ages of the applicants, hired guards whose average age was fourteen years younger than plaintiff and much younger than the average age of the former Pinkerton guards who were not hired.

Taken together, the evidence presented by Lembo creates a genuine dispute as to whether Chenega's reason for failing to hire Lembo was a pretext for age discrimination. Accordingly, the court will deny Chenega's motion for summary judgment on plaintiff's claims for age discrimination under the ADEA and FEHA.[4]

---

[4] The court declines to address Chenega's argument on Lembo's claims for punitive damages under FEHA and liquidated damages under the ADEA. Federal Rule of Civil Procedure 56(g) provides that if a court does not grant all relief requested by a motion for summary judgment, "it may enter an order stating any material fact--including an item of damages or other relief--that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g) (emphasis added). The Advisory Committee's notes on the 2010 amendments to Rule 56 provide that "[e]ven if the court believes that a fact is not

IT IS THEREFORE ORDERED that Chenega's motion for summary judgment or, in the alternative, partial summary judgment be, and the same hereby is, DENIED.

DATED:  May 9, 2011

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

genuinely in dispute it may refrain from ordering that the fact be treated as established.  The court may conclude that it is better to leave open for trial facts and issues that may be better illuminated by the trial of related facts that must be tried in any event."  Id. advisory committee's notes on 2010 amendments.  Given that the Rule formerly stated that a court "shall" enter such an order (prior to 2007 amendments), and then that the court "should" enter such an order (prior to 2010 amendments), the current language that a court "may" do so indicates that courts have considerable discretion not to do so.